

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

BARBARA A. FISHER o/b/o R.L.F.,                    6:18-CV-06736-MJR

                Plaintiff,                    DECISION AND ORDER

   -v-

ANDREW SAUL,
Commissioner of Social Security,[1]

                Defendant.

———————————————————

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States

Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 20)

Plaintiff Barbara Fisher brings this action pursuant to 42 U.S.C. §§405(g) and

1383(c)(3) on behalf of her child, R.L.F., seeking judicial review of the final decision of the

Commissioner of Social Security denying R.L.F. Supplemental Security Income Benefits

("SSI") under the Social Security Act (the "Act").  Both parties have moved for judgment

on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the

following reasons, Fisher's motion (Dkt. No. 13) is denied and the Commissioner's motion

(Dkt. No. 18) is granted.

## BACKGROUND

On January 7, 2015, Fisher filed an SSI application on behalf of her child, R.L.F.,

alleging that R.L.F. has been disabled since March 1, 2008 due to Attention-Deficit

Disorder."[2]  (Tr. 12, 157, 182)  Born on September 26, 2001, R.L.F. was thirteen years

---

[1]  Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party
pursuant to Fed. R. Civ. P. 25(d).
[2]  References to "Tr." are to the administrative record in this case.

old at the time her mother filed the disability application on her behalf.  (Tr. 15)  The application was denied on May 4, 2015.  (Tr. 12, 82-84)  Fisher requested a hearing on May 22, 2015.  (Tr. 12, 93)  On May 4, 2017, R.L.F. appeared with counsel before Administrative Law Judge Brian Kane (the "ALJ") for a hearing.  (Tr. 33-71)  Both R.L.F. and Fisher testified at the hearing.  (*Id.*)  On August 28, 2017, the ALJ issued his decision denying R.L.F.'s SSI claim.  (Tr. 12-27)  Fisher requested review by the Appeals Council (Tr. 7-8), but on August 17, 2018, the Appeals Council denied Fisher's request, making the ALJ's decision the final decision of the Commissioner (Tr. 1-6).  This action followed.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner."  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the

conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (WDNY 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   <u>Standards for Determining "Disability" Under the Act</u>

An individual under the age of eighteen is considered disabled within the meaning of the Act "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(i). The Commissioner has set forth a three-step process to determine whether a child is disabled as defined under the Act. *See* 20 C.F.R. §416.924. At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. *Id.* §416.924(b). If so, the child is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the child has a medically

determinable impairment(s) that is "severe." *Id.* §416.924(c). If the child does not have a severe impairment(s), he or she is not disabled. *Id.* If the child does have a severe impairment(s), the ALJ continues to step three. At step three, the ALJ examines whether the child's impairment(s) meets, medically equals, or functionally equals the listed impairments in Appendix 1 to Subpart P of Part 404 of the Commissioner's regulations (the "Listings"). *Id.* §416.924(d). In determining whether an impairment(s) functionally equals the Listings, the ALJ must assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* §416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must result in "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* §416.926a(a). A child has a "marked" limitation when his or her impairment(s) "interferes seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* §416.926a(e)(2). A child has an "extreme" limitation when his or her impairment(s) "interferes very seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* §416.926a(e)(3). If the child has an impairment(s) that meets, medically equals, or functionally equals the Listings, and the impairment(s) meets the Act's duration requirement, the ALJ will find the child disabled. *Id.* §416.924(d).

III.    *The ALJ's Decision*

The ALJ first found that R.L.F. was an "adolescent" on the date of the application and an "adolescent" at the time of the hearing decision. (Tr. 15) The ALJ then followed the three-step process for evaluating R.L.F.'s SSI claim. At the first step, the ALJ found

that R.L.F. has not engaged in substantial gainful activity since January 7, 2015, the date of her SSI application.  (Tr. 15)  At the second step, the ALJ determined that R.L.F. has the following severe impairments: Attention-Deficit Hyperactivity Disorder (ADHD) and learning disorder.[3]  (Id.)  At the third step, the ALJ found that R.L.F. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (Tr. 15-16)  The ALJ then proceeded to consider whether R.L.F. has an impairment or combination of impairments that functionally equals the Listings, but concluded that R.L.F. does not because R.L.F. does not have an impairment or combination of impairments that result in either marked limitations in two domains of functioning or extreme limitation in one domain of functioning.  (Tr. 16-27)  As a result, the ALJ held that R.L.F. has not been disabled within the meaning of the Act since the January 7, 2015 application date.  (Tr. 27)

IV.    *Fisher's Challenge*

Fisher argues that remand is required because the ALJ gave partial weight to an opinion in a Teacher Questionnaire that did not pertain to R.L.F.  (*See* Dkt. No. 13-1 (Plaintiff's Memo. of Law))  For the reasons that follow, the Court finds that the partial weight assigned to this opinion did not have an impact on the outcome of the ALJ's disability determination.  Thus, to the extent that the ALJ partially credited an opinion that did not pertain to R.L.F., the error was harmless and does not require remand.

During the hearing, the ALJ asked the parties if they had any objections to the documents in the record.  (Tr. 35)  Plaintiff's attorney objected to a Teacher Questionnaire

---

[3] At step two, the ALJ noted that R.L.F. was diagnosed with asthma.  (Tr. 15)  However, the medical record demonstrated that the condition was mild, intermittent and required only conservative treatment. (*Id.*)  Thus, the ALJ found that R.L.F.'s asthma was non-severe.  (*Id.*)

by Janelle Austin, which indicated that R.L.F. was not limited in any domain. (*Id.*) Plaintiff's attorney noted that Austin's conclusions were wholly inconsistent with R.L.F.'s academic testing. (*Id.*) The ALJ overruled the objection by plaintiff's counsel. (*Id.*) The ALJ noted that he would take counsel's argument into consideration in evaluating the evidence and would consider the document in conjunction with all of the other evidence in the record. (*Id.*) Fisher testified that she believed Austin had R.L.F. mixed-up or confused with another child in Austin's class who had the same first name as R.L.F. (Tr. 54-55)   The Appeals Counsel later removed Austin's Teacher Questionnaire from the record "because it [did] not refer to the claimant." (Tr. 194-200) Further, the parties now seem to agree that Austin's Teacher Questionnaire did not refer to R.L.F.  For these reasons, the Court finds that Austin's opinion most likely did not pertain to R.L.F. and should not have been considered by the ALJ.  However, the Court also concludes, after reviewing the ALJ's determination in light of the record as a whole, that this error was harmless.

The ALJ afforded great weight to the opinion of Rebecca O'Connor, R.L.F.'s ninth-grade earth science teacher, who completed a Teacher Questionnaire on April 24, 2017. (Tr. 19; 239-46) O'Connor's Teacher Questionnaire undisputedly pertained to R.L.F. and contained findings that are consistent with other evidence in the record.  Moreover, plaintiff does not object to the weight assigned by the ALJ to O'Connor's opinion. O'Connor opined that R.L.F. has very serious problems in acquiring and using information and mild problems in attending and completing tasks. (*Id.*)  O'Connor also opined that R.L.F. has no problems in interacting or relating with others; no problems in moving about and manipulating objects; and no problems in caring for herself. (*Id.*)  By comparison,

6

Austin's opinion indicated that R.L.F. has no problems in any of the five domains.[4]  (Tr. 19)  Thus, both O'Connor and Austin found that R.L.F. has no problems in the domains of either caring for herself or moving about and manipulating objects. (Tr. 19)    In accordance with the findings of *both O'Connor and Austin*, the ALJ also concluded that R.L.F. has no limitations in either of these domains.  O'Connor and Austin differed in their findings as to R.L.F.'s functioning in acquiring and using information as well as attending and completing tasks.  Here, the ALJ clearly sided with O'Connor.  He concluded that R.L.F. has a marked limitation in acquiring and using information and less than a marked limitation in attending and completing tasks.  (Tr. 21-22)  This finding is consistent with O'Connor's opinion that plaintiff has very serious problems in acquiring and using information and mild problems in attending and completing tasks.   (Tr. 19)  It is inconsistent with Austin's finding that R.L.F. has no limitations in these domains.  Thus, it is clear to the Court that the ALJ credited *only* those portions of Austin's opinion which are consistent with O'Connor's opinion, and that he specifically discounted those portions of Austin's opinion which differed from O'Connor's findings.[5]  Indeed, the ALJ noted that he was giving Austin's opinion only partial weight because "her opinion regarding the claimant's ability to interact with others, care for her personal needs, and move about and manipulate objects is consistent with [O'Connor's] opinion and with the claimant's medical

---

[4] Since the Appeals Council removed Austin's Teacher Questionnaire from the record, the Court has not had an opportunity to review it.  However, the ALJ set forth the relevant portions of Austin's opinion in his decision.  Plaintiff argues that because this exhibit was removed from the record, the Commissioner has failed to file a complete transcript pursuant to 42 U.S.C. §405(g), and that this is also a basis for remand. The Court finds that since the relevant portions of Austin's opinion are described in the ALJ's decision, and because neither party disputes the substance of Austin's opinions, remand is not required for this reason.

[5] It is noted that with respect to the domain of interacting and relating with others, the ALJ found R.L.F. to be more limited in this domain than opined by either Austin or O'Connor.  (Tr. 23)

7

record…[h]owever, the evidence suggests that claimant is more limited than Ms. Austin opined." (Tr. 19)

The Second Circuit has held that remand of an administrative appeal is futile when the ALJ's "reliance on the erroneous aspect of [his] reasoning is substantially tangential to [his] non-erroneous findings" or "when overwhelming evidence in the record makes it clear the same decision was inevitable." *See Lin Zhong v. United States DOJ*, 480 F.3d 104, 117 (2d Cir. 2006). The Court concludes that both scenarios apply here. While it was error for the ALJ to credit any portion of Austin's opinion because it did not pertain to R.L.F., the error was harmless because the only portions of Austin's opinion which he credited are fully consistent with O'Connor's opinion and the other evidence in the record. Stated another way, the Court finds that even if the ALJ had correctly determined that Austin's opinion did not refer to R.L.F. and had discounted it completely, the ALJ would have reached the same conclusions as to R.L.F.'s functioning in each domain. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("W[h]ere application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency consideration."); *Lynch v. Astrue*, 07-CV-249, 2008 U.S. Dist. LEXIS 61884, *6 (WDNY Aug. 8, 2008) ("ALJ's failure to refer to [agency consultant's] reports is, at best, harmless error, since his written consideration of [the] report would not have changed the outcome of the ALJ's decision."); *Haskins v. Comm'r of Soc. Sec.*, 5:05-CV-292, 2008 U.S. Dist. LEXIS 95905 (NDNY Nov. 25, 2008) (ALJ's reliance on the erroneous portions of the VE's testimony was harmless error since, notwithstanding the incorrect testimony given by the VE as to certain occupations, there were others jobs that plaintiff was capable of performing); *Ecker v. Colvin*, 15 Civ. 2673, 2016 U.S. Dist. LEXIS

87437, *31-32 (SDNY July 6, 2016) (ALJ's dismissal of evidence relating to plaintiff's Lyme disease was legal error, but the error was harmless "[b]ecause the ALJ relied so heavily on the opinions of physicians who factored Plaintiff's Lyme disease into their conclusions.")

Plaintiff also argues that remand is required because the ALJ mistakenly found that R.L.F.'s Global Assessment of Functioning ("GAF") score of 50 was consistent with moderate impairments, when it is actually indicative of serious impairments. (*See* Dkt. No. 13-1 (Plaintiff's Memo. of Law)).   Here again, the Court finds that any mischaracterization of R.L.F.'s GAF score by the ALJ had no material effect on the outcome of the disability determination and was harmless error.

Pursuant to the Diagnostic and Statistical Manual of Mental Disorders (DSM-4), a GAF score measures how severely a person's mental health symptoms affect their daily activities and functioning. *See Maldonado v. Berryhill*, 16-CV-165, 2017 U.S. Dist. LEXIS 34782 (SDNY Mar. 10, 2017) ("The GAF is a scale that indicates a clinician's overall opinion of an individual's psychological, social, and occupational functioning, and runs from 0 to 100.")  In March of 2008, providers at Genesee Mental Health assigned R.L.F. a GAF score of 50.  (Tr. 430)  The ALJ noted that this GAF score indicated that R.L.F. had moderate limitations in functioning due to her mental health impairments.  (Tr. 20) However, a GAF score in the range of 40 to 50 reflects serious impairments, while a score in the range of 51 to 60 reflects moderate impairments. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (4th ed. Text Revision).  Thus, plaintiff is correct that, according to the GAF scale, R.L.F.'s 2008 GAF score reflected

serious rather than moderate impairments. The ALJ assigned partial weight to this score. (*Id.*)

However, the Court finds that the ALJ's characterization of the 2008 GAF score of 50 as reflecting only moderate limitations had no impact in the outcome of his determination. Indeed, the ALJ mentioned the score only once, when summarizing the opinion evidence. Significantly, the ALJ did not refer to the 2008 GAF score at all in his specific discussions as to how R.L.F. functioned in each domain. Instead, the ALJ cited Fisher's testimony, R.L.F.'s testimony and R.L.F.'s much more recent school and medical records. Thus, there is no indication that the ALJ relied on the 2008 GAF score when determining the scope of R.L.F.'s limitations in any of the domains.

Further, the record contains substantial evidence to support the ALJ's findings as to R.L.F.'s functioning in each of the five domains, specifically those domains related to her mental health. (Tr. 237-46) The record reflects that R.L.F. demonstrated behavioral problems and was diagnosed with ADHD. (Tr. 350, 496, 504-05, 520-29)   However, R.L.F.'s pediatrician noted that the ADHD was moderate and improving with medication. (*Id.*) R.L.F.'s behavioral issues also improved over time and with treatment. (*Id.*) R.L.F.'s individualized education plan ("IEP"), which placed her on track for a Regent's diploma, stated that R.L.F. interacted well with her peers and teachers and had a positive attitude. (Tr. 327-32) Educational records from January 2017 indicate that R.L.F. is friendly, somewhat shy, and has positive peer relations. (Tr. 207) R.L.F. received some therapy in September 2015 due to sexual behavior and mental health issues, but showed significant improvement in her symptoms by August of 2016. (Tr. 487) The ALJ noted that there is no evidence in the record that R.L.F. engages in any self-injurious behavior

or self-soothing activities that are developmentally regressive.  (Tr. 26)  The ALJ also correctly noted that there is no indication that R.L.F. needs "frequent treatment or therapy and she does not experience debilitating exacerbations of her ADHD that require hospitalizations or cause metal fragility."  (Tr. 26)  Hearing testimony revealed that R.L.F.'s sleeping and appetite were good, and that she engages in hobbies and activities which she enjoyed.  (Id.)  R.L.F. testified that she does not have any problems with teachers, other kids, or on the bus.  (Tr. 37-38)  O'Connor noted that R.L.F. played cooperatively with other children, followed rules, used language appropriate to the situation and listener, and made friends.  (Tr. 239-46)

Finally, the Court finds that the 2008 GAF score does not support a finding that R.L.F. has mental impairments rendering her disabled under the Act.  The score was assigned in March of 2008, seven years before the disability application, when R.L.F., who is now an adolescent, was only six years old.  It reflects her mental functioning on her first day of therapy.  Indeed, when R.L.F. was discharged from therapy on May 3, 2009, her GAF score had risen to 65, which signifies only mild symptoms.  (Tr. 470)  As described above, all of the recent medical evidence suggests that R.L.F.'s mental impairments were, at most, mild to moderate in nature.  Thus, the Court finds that the 2008 GAF score has little to no evidentiary value.  See Davila v. Comm'r of Soc. Sec., 16-CV-4774, 2018 U.S. Dist. LEXIS 177986 (EDNY Oct. 16, 2018) (noting that several district courts in the Second Circuit have "questioned" the proposition that "a GAF [score] generally providers a reliable basis for disability determination and explaining that "GAF scores, standing alone, have limited evidentiary value."); Binga v. Comm'r of Soc. Sec., 1:18-cv-1458, 2020 U.S. Dist. LEXIS 41533, n. 4 (WDNY Mar. 10, 2020) ("The Social

Security Administration has limited the manner in which GAF score are used because they are generally not useful without additional supporting description and detail."); *McNeal v. Comm'r of Soc. Sec.*, 6:17-cv-06823, 2019 U.S. Dist. LEXIS 17465 (WDNY Jan. 28, 2019) (agreeing with the ALJ's assessment that "GAF scores are vague, one-time assessments of general symptomology and do not represent overall functioning over any significant period.")  For these reasons, there is no basis to remand the matter as a result of the ALJ's treatment of R.L.F.'s 2008 GAF score.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 18) is granted.

The Clerk of the Court shall take all necessary steps to close the case.


**SO ORDERED.**


Dated:      May 29, 2020
            Buffalo, New York


                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge